November 19th, 1925, complainant made a contract with defendant Gibbs for the construction of a school building. By this contract defendant Gibbs agreed, inter alia, to
"Provide a satisfactory bond, in the full amount of his contract, executed upon the blank form in use by the board, by a surety company acceptable to the board and qualified to do business under the laws of the State of N.J., such bond insuring the fulfillment of all the provisions of this contract, the advertisement, instructions to bidders, drawings and specifications, which are a part hereof, and the satisfactory completion of the work thereby required and shown, within the time stated, and covering the one calendar year's guarantee required in the prompt payment of all persons furnishing materials or labor, or both, required for the prosecuting of the work, and the defending and settlement, without expense to the board, of liens, claims for personal injury, or otherwise, or from any other liabilities arising from the execution of the work, or from the use of patented articles."
Defendant Gibbs in due time delivered to complainant a bond in the full amount of the contract, executed by defendant Continental Casualty Company (a surety company duly qualified and acceptable). This bond was received by the complainant in November or December, 1925, and was filed without complainant noticing that it was not on the blank form in use by the board, or noticing the language of the condition of the bond, which was as follows:
"If the above bounden principal shall well and truly keep, do and perform, each and every, all and singular, the matters and things *Page 444 
in said contract set forth and specified to be by the said principal kept, done and performed at the time and in the manner in said contract specified, and shall pay over, make good and reimburse to the above-named obligee, all loss and damage which said obligee may sustain by reason of failure or default on the part of said principal, then this obligation shall be void."
The building was duly and properly constructed and accepted, but in the fall of 1926 it developed that the defendant Gibbs had not paid all his debts for labor and materials. Various stop-notices or lien claims were filed against the fund, or balance of contract price, still in the hands of complainant, and a suit was commenced to ascertain and determine the respective rights of the various claimants in and to this fund. The aggregate of the various claims is far in excess of the total of the fund. Notices have been given to complainant board, and to defendant casualty company, by several of the claimants, to whom considerable sums are due from Gibbs and who will not receive payment out of the fund, that such claimants demand that the surety company pay their claims, under the terms of the bond filed, or that if the surety company be not liable under the bond, then that the complainant board shall pay, because it failed to obtain such proper bond as under the statute it was bound to obtain. P.L. 1918 ch. 75 p. 203, as amended P.L. 1920p. 243.
Suit at law was commenced by at least one of the claimants against the surety company, on its bond, and interlocutory judgment obtained; but the surety company is seeking to have that judgment opened and to obtain leave to defend.
About December, 1926, when these matters came to the notice of the board, it examined the bond and noticed for the first time that it did not strictly conform to the language of the contract, whereupon it proceeded to file the present bill.
The prayer of the bill is in the alternative; complainant seeks either a decree for reformation of the bond by adding to the conditions thereof the words:
"And if the above bounded principal shall make prompt payment of all persons furnishing materials or labor or both, required for the prosecuting of the work in the said grade school, and if the said principal *Page 445 
shall defend and make settlement, without expense to the said board of education, of liens, claims for personal injury or otherwise, and for any other liability arising from the erection of the work or from the use of patented articles."
Or words of similar import; or a decree for specific performance, directing the defendants to furnish a bond in the language of the original contract.
It is quite clear that no decree can be made for reformation. There is no intimation of any fraud, and no evidence of any mutual inadvertence or mistake — no evidence that the casualty company ever intended to execute a bond in any other language than that which it did execute. Doubtless at the time it might well have been willing to execute the bond in the form now desired by complainant, if its attention had been called to it, and request made; but that is beside the mark.
Neither does it seem that complainant is entitled to any decree that defendants shall furnish an additional or substitute bond in the language desired. Such a decree could not be made against the defendant casualty company because there is no promise or agreement by it either to furnish such a bond itself, or to procure that the defendant Gibbs shall furnish such a bond. The most that it has promised and agreed to do (assuming the view most favorable to complainant) is to pay money to the complainant if the defendant Gibbs fails to furnish such bond.
As to the defendant Gibbs, while decree for specific performance could be made against him, it will not be made because it would be useless on account of the impossibility of his performing it. Equity will not do a vain thing. It was at least tacitly admitted by all counsel on the argument that Gibbs has no assets whatever. It is quite obvious that no surety company would execute the desired bond at the present time without receiving a sum sufficient to cover all of these unpaid debts of Gibbs.
The bill will be dismissed, but without prejudice to any suit which may have been, or may hereafter be, brought against the surety company on the bond. Costs, but no counsel fee, will be allowed the defendant surety company. *Page 446